**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 4, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DANIEL E. MURPHY,

      Plaintiff - Appellant,

v.

COLORADO DEPARTMENT OF
CORRECTIONS; JOSEPH ORTIZ;
PEGGY HEIL; PAUL HOLLENBECK;
DON MORTON; LARRY TURNER;
MICHAEL LEEWAYE,

      Defendants - Appellees.

No. 09-1443

(D. Colo.)
(D.C. No. 1:06:CV-01948-REB-BNB)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Circuit Judge, **TACHA**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and the appellate record, this panel concludes that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is submitted for decision on the briefs.

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

Daniel E. Murphy, a state prisoner appearing pro se,[1] appeals from a summary judgment entered in favor of the Colorado Department of Corrections (CDOC) and five CDOC employees on his 42 U.S.C. § 1983 complaint.  Murphy alleges Defendants violated his constitutional rights by classifying him as a sex offender and failing to provide him with a safe environment in which to participate in sex offender treatment.  In a thorough and well-reasoned decision, the district court concluded Defendants were entitled to judgment on both claims.  We affirm.

## I.     BACKGROUND

Murphy was originally convicted in Colorado state court of extreme indifference murder, felony murder, second-degree sexual assault and child abuse.  Those convictions were overturned by the Colorado Supreme Court on direct appeal.  *See People v. Roark*, 643 P.2d 756, 759 (Colo. 1982).  Murphy then entered into a plea agreement pursuant to which he pled guilty to first degree murder in exchange for dismissal of the other charges. He was sentenced to an indeterminate term of twenty years to life imprisonment. Murphy admitted to murdering a female child on the night before her second birthday. The child was found lying on a couch and had suffered a severe beating.  The opening of her vagina and uterus were torn.  There was also indication of trauma to her rectum and severe internal bleeding.  During Murphy's parole interview on November 26, 2006, he denied raping the victim, but admitted putting his fingers in her vagina.

Pursuant to CDOC Administrative Regulation (AR) 700-19, all inmates are

---

[1] We liberally construe pro se filings.  *See Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003).

assigned a sex offender classification rating to assist in the assessment of their treatment and rehabilitation needs.[2]  Following a hearing on July 12, 2000, Murphy was rated an S-4 offender.  Such persons are defined as:

> Offenders who have a history of sexual assaults or deviance for which they may not have been convicted.  These cases often involve plea bargains where the factual basis of the crime involved a sex offense.  This category also includes misdemeanor convictions and juvenile convictions for sex offenses.

(R. Vol. II at 85.)  Inmates who receive a classification of S-4 are among those recommended for the Sex Offender Treatment and Monitoring Program (SOTMP).  Sex offenders will not be accepted into the SOTMP unless, among other things, they "admit to sexually abusive behavior" and are "willing to discuss it."  (R. Vol. II at 87.)  Once an inmate has been given an S-4 classification following a hearing, the decision is final and there is no opportunity for an administrative appeal or re-evaluation.

On September 25, 2008, Murphy filed an amended complaint pursuant to 42 U.S.C. § 1983 against Defendants.[3]  In Count One, he alleged Defendants violated his constitutional rights by wrongfully classifying him as a S-4 sex offender and by refusing

---

[2] Defendants attached to their motion for summary judgment a copy of AR 700-19 with an effective date of November 1, 2008.  They did not submit the version of AR 700-19 in effect at the time of Murphy's classification hearing (July 12, 2000).  Murphy does not contend the version in effect at the time of his hearing was meaningfully different from the version in effect in 2008.  The district court relied upon the 2008 version in reaching its decision and we will do likewise.

[3] Murphy filed his initial complaint on September 29, 2006, which is the controlling date for purposes of the statute of limitations.

to reconsider his sex offender classification.[4]  In effect he claims to be a victim of "Catch 22" — because of his S-4 classification, he is required to participate in a sex offender treatment program as a precondition to parole eligibility.  However, because he will not admit to having a problem in the area of sexually assaultive behavior, he is ineligible for sex offender treatment.

In Count Two, Murphy alleged Defendants violated his constitutional rights by failing to provide him with a safe environment in which he could participate in a sex offender treatment program.  He claimed he was previously incarcerated out-of-state for his protection and was returned to Colorado so he could complete a sex offender treatment program.  Upon his return to Colorado, he "was violently beaten when other prisoners became aware of his crime."  (R. Vol. I at 607.)  He was then transferred to another facility in Colorado where he "was again severely beaten and sodomized twice." (*Id.*)  Murphy was transferred to the custody of the Idaho Department of Corrections on or about February 23, 2003, under a false identity.  He claimed he could not participate in a sex offender treatment program in Idaho without putting himself at risk and requested he be incarcerated in an out-of-state facility "that provides solely for the treatment of those classified as sex offenders."  (*Id.*)

Defendants filed a motion for summary judgment, which the district court granted. As to Murphy's first claim, the court concluded that, to the extent it could be interpreted

---

[4] In his initial complaint, Murphy stated he was not a sex offender because "strong evidence was presented [to] the trial court" suggested he committed the underlying offense out of an "uncontrollable fit of rage" rather than "for sexual gratification."  (R. Vol. I at 17.)

as a challenge to his initial classification as an S-4 sex offender, the claim was barred by the statute of limitations.  To the extent it could be interpreted as a challenge to Defendants' refusal to reconsider his S-4 classification, Defendants were entitled to summary judgment because (1) there is no due process right to reconsideration of a sex offender classification; and (2) Murphy failed to state a plausible equal protection claim. The court also concluded Defendants were entitled to summary judgment on Murphy's second claim.  To the extent Murphy was asserting his inability to participate in sex offender treatment deprived him of due process, "[s]uch a claim fails . . . because the plaintiff does not have a liberty interest in eligibility for parole."[5]  (*Id.* at 427.)  Murphy's Eighth Amendment claim failed because he did not allege Defendants knowingly disregarded a serious risk of harm to him.[6]

The district court granted in part and denied in part Murphy's motion for leave to proceed *in forma pauperis* (*ifp*) on appeal.[7]

---

[5] The court also concluded: "To the extent the plaintiff is attempting to shorten the duration of his confinement, his due process claim may not properly be resolved in an action under § 1983."  (R. Vol. II at 428.)

[6] The court also held the individual defendants were entitled to qualified immunity to the extent Murphy sought monetary damages against them in their individual capacities and the court dismissed the complaint as to the CDOC because Murphy did not list the CDOC in the section of his complaint entitled "Parties" and did not assert any claims against it.  Murphy challenges the court's qualified immunity determination on appeal.  Because we conclude summary judgment was correctly entered in favor of all Defendants on all claims, we need not address the issue.

[7] The court required Murphy to "pay an initial partial filing fee of $24.00" and "make monthly payments of twenty percent (20%) of the preceding month's income credited to [Murphy's] account or show cause each month . . . why he has no assets and no means by which to make the monthly payment."  (R. Vol. II at 445.)  It appears

## II.     DISCUSSION

Murphy contends the district court erred in entering a summary judgment.[8] We review the grant of summary judgment de novo, applying the same standard as the district court. *See United States v. AMR Corp.*, 335 F.3d 1109, 1113 (10th Cir. 2003). Summary judgment is only appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

Murphy did not pay the initial partial filing fee and has neither made the required monthly payments nor shown cause for his failure to do so. He did not renew his request to proceed *ifp* with this Court. He did, however, submit a letter to this Court in which he stated he is unable to pay the required fees because he does not have sufficient funds in his inmate account. Along with his letter, he submitted a one-month balance sheet for his account reflecting a deficit of $766.31 as of December 8, 2009. To proceed *ifp* on appeal "an appellant must show a financial inability to pay the required filing fees *and* the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *DeBardeleben v. Quinlan*, 937 F.3d 502, 505 (10th Cir. 1991) (emphasis added). Murphy has not made the latter showing and thus, we do not relieve him of his obligation to pay the required fees.

[8] Murphy raises two additional arguments, neither of which are meritorious. First, he contends the court erred in denying his motion for assistance of counsel. That motion was denied in an order dated September 10, 2009. He did not state he was appealing from that order in his notice of appeal. In any event, the court did not abuse its broad discretion in declining to appoint volunteer counsel for Murphy. *See DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993) (stating, in a § 1983 case, "[t]he district court is vested with broad discretion in determining whether to appoint counsel and only in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned") (quotations omitted). Second, he contends his sex offender classification violates the terms of his plea agreement. He did not raise this claim in his complaint and the district court did not grant him leave to amend his complaint to add this claim. Because this claim was not considered by the district court, we will not address it on appeal. *See Singleton v. Wuff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

56(c)(2).  We view the record in the light most favorable to the nonmoving party.  *See*

*AMR Corp.*, 335 F.3d at 1113.

A.      Claim One

In entering summary judgment on Murphy's first claim, the Court concluded (1)

there is no due process right to reconsideration of a sex offender classification; and (2)

Murphy's "conclusory allegation that other similarly situated sex offenders are treated

differently than the plaintiff does not suffice to state a plausible claim for violation of his

equal protection rights."[9]  (R. Vol. II at 425.)

1.      Due Process

"The Due Process Clause guarantees due process only when a person is to be

deprived of life, liberty, or property."  *Chambers v. Colorado Dep't of Corr.*, 205 F.3d

1237, 1242 (10th Cir. 2000) (quotations omitted).  In *Chambers*, we stated "the CDOC

has not created a liberty interest in a prisoner's not being classified a sex offender."  *Id.*

However, we recognized prison officials may create a liberty interest in the consequences

of the sex offender label.  We held prison officials could not remove such

consequences—specifically, the opportunity to earn good time credits at a particular

rate—without affording the plaintiff "any opportunity to a hearing."  *Id.* at 1243.  We did

not discuss what type of hearing was required because the defendants in *Chambers*

---

[9] The court also concluded that, to the extent the claim could be interpreted as a challenge to Murphy's initial classification, that claim was barred by the statute of limitations.  In this appeal, according to Murphy, he is not challenging his initial classification, but is rather challenging Defendants' refusal to reconsider that classification.

admitted no hearing was held.

We expanded on our *Chambers* holding in *Gwinn v. Awmiller*, 354 F.3d 1211 (10th Cir. 2004). Gwinn alleged the prison officials deprived him of his liberty interest "without affording him the procedural protections required by the Due Process Clause" by classifying him as a sex offender when 1) he had not been convicted of a sexual offense and 2) he claimed he had not committed the charged sexual assault.[10] *Id.* at 1216. Gwinn was provided a hearing but argued the hearing did not satisfy the requirements of due process. *Id.* at 1217-18. We held:

> [A]n inmate who has not previously been convicted of a sex offense may be classified as a sex offender for purposes of a prison treatment program only if the prison affords him the procedural protections to which prisoners facing disciplinary sanctions involving liberty interests are generally entitled . . . . Those procedural requirements are . . . notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Additionally, in order to comport with due process, there must be some evidence to support the hearing panel's decision and the decisionmaker must be impartial.

*Id.* at 1218-19 (citations omitted).

Neither *Chambers* nor *Gwinn* nor any other case from this Circuit hold an inmate who is classified as a sex offender following a hearing that comports with the requirements of due process is entitled to reconsideration of his classification at some later date. Just as there is no federal due process right to appeal a final judgment in a state criminal case (absent a statute affording such a right), *see Halbert v. Michigan*, 545

---

[10] Gwinn was charged with robbery, aggravated robbery and sexual assault. He pled guilty to robbery and the sexual assault charge was dismissed. *Gwinn*, 354 F.3d at 1214.

U.S. 605, 610 (2005), an inmate in state prison does not have a constitutional right to appeal his sex offender classification in a prison administrative proceeding.[11]

## 2. Equal Protection

The Equal Protection Clause prohibits a state from "deny[ing] any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The district court dismissed Murphy's equal protection claim because his "conclusory allegation that other similarly situated sex offenders are treated differently than [him] does not suffice to state a plausible claim for violation of his equal protection rights." (R. Vol. II at 425.)

Murphy argues the district court erred in dismissing this claim because it "overlooked" certain facts. (Appellant's Opening Br. at 20.) He does not, however, point to any facts indicating he was treated differently from anyone else. Conclusory allegations are not sufficient to state a claim for relief. *See Dunn v. White*, 880 F.2d 1188, 1198 (10th Cir. 1989) (quotations omitted). As we have explained: "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The

---

[11] Murphy asserts an attachment to AR 700-19 entitled "Staffing Form" creates an entitlement to review of a sex offender classification. He is mistaken. The Staffing Form simply discusses the procedures for assessing whether a sex offender classification hearing should be held. It does not provide for an appeal following such hearing.

district court did not err in dismissing Murphy's equal protection claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted[.]").

B.     Claim Two

The summary judgment entered on Murphy's second claim came because he did not allege Defendants knowingly disregarded a serious risk of harm to him, which is a necessary component of a claim under the Eighth Amendment.[12]  Murphy contends there were disputed issues of material facts which should have precluded summary judgment. He is incorrect.

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (quotations omitted).  In order to succeed on an Eighth Amendment claim, a prisoner must show: (1) he is incarcerated under conditions posing a substantial risk of serious harm; and (2) the prison official was deliberately indifferent to his safety. *See Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).  The first element is objective; the second is subjective. *Id.*  In order to succeed on the subjective component, the prisoner must do more than show prison officials should have known of the risk of harm. *See id.*  He "must present evidence supporting an inference that [the individual defendants] actually knew about a substantial risk of serious harm to his safety." *Id.*

---

[12] The court also concluded Defendants were entitled to judgment to the extent Murphy was alleging a violation of his due process rights.  Murphy does not challenge that determination on appeal.

The district court concluded Murphy had "arguably . . . established the existence of substantial risk of serious harm in attending sex offender treatment."[13]  However, it concluded Murphy failed to establish the subjective component of his claim because he did not allege or offer any evidence showing "that any of [the individual] defendants actually knew of the existence of the substantial risk of serious harm to the plaintiff in attending sex offender treatment or that any of the defendants have refused to provide the recommended treatment in a safe environment."  (R. Vol. II at 431.)

Murphy contends the court erred because all but one of the individual defendants could "sit down and read" Murphy's files "and with their own eye would be able to gather knowledge that [Murphy] has a history of suffering assaults from the hands of other inmates out to administer their own form(s) of prison life 'justice.'"  (Appellant's Opening Br. at 23.)  Even if Murphy could support this allegation with evidence, it is clearly insufficient to satisfy the subjective component of an Eighth Amendment claim. *See Verdecia*, 327 F.3d at 1175 (in order for liability to attach, "the defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference") (quotations omitted).

**AFFIRMED.**  We remind Murphy of his obligation to pay the entire filing fee.

---

[13] Defendants contend Murphy failed to establish the objective element of his claim.  They argue: "The fact that Murphy may have been assaulted by inmates years ago in a different prison for reasons that may or may not be connected to the nature of his crime does not mean that Murphy is necessarily at a substantial risk of serious harm in a different prison system simply because he participates in sex offender treatment.  This is merely speculation."  (Appellee's Answer Br. at 12.)  Because we conclude Murphy failed to establish the subjective component of his claim, we need not decide this issue.

*See supra* n.7. He shall be given credit for any payments previously made in this appeal.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge